**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

UNITED STATES OF AMERICA,            )
                                     )
                    Plaintiff,       )
                                     )
v.                                   )        Case No. CR-20-00041-JD
                                     )            (No. CIV-21-1005-JD)
                                     )
MARCOS NENAIKITA,                    )
                                     )
                    Defendant.       )

## <u>ORDER</u>

Before the Court is Defendant Marcos Nenaikita's ("Nenaikita") pro se Motion to

Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody under 28 U.S.C.

§ 2255 ("Motion") [Doc. No. 87] and Memorandum in Support ("Memorandum") [Doc.

No. 87-1]. The United States filed a response in opposition [Doc. No. 95], and after the

Court granted Nenaikita's request for an extension of time to file a response or reply

[Doc. No. 99], Nenaikita did not file a timely reply.[1] Upon consideration of the parties'

filings and the case record, the Court denies Nenaikita's § 2255 motion.

## I.     <u>Background</u>

On February 19, 2020, a grand jury indicted Nenaikita on one count of distributing

actual methamphetamine. [Doc. No. 17]. In June 2020, the government filed a one-count

---

[1] Rule 7(c) of the Rules Governing Section 2255 Proceedings requires the Court to give a party to a § 2255 motion "against whom [ ] additional materials are offered an opportunity to admit or deny their correctness." The Court allowed Nenaikita to file a reply, which complies with this rule. *See United States v. Baldwin*, 744 F. App'x 537, 541 (10th Cir. 2018) (unpublished).

superseding information charging Nenaikita with distribution of a mixture or substance containing a detectable amount of methamphetamine (mixed methamphetamine). [Doc. No. 37]. Shortly thereafter, the Court granted Nenaikita's unopposed motion for a combined plea and sentencing proceeding. [Doc. No. 43]. By having a combined plea and sentencing proceeding, Nenaikita was granted access to the presentence investigation reports before he entered his plea. *See* [*id.*]; *see also* Earley Aff. [Doc. No. 95-1 at 6–7].[2]

The United States Probation Office filed the initial presentence investigation report ("Initial PSR") on October 15, 2020, and filed the final presentence investigation report ("Final PSR") on October 29, 2020. [Doc. Nos. 66, 70]. On November 12, 2020, Nenaikita filed a sentencing memorandum through counsel. [Doc. No. 75]. Both presentence investigation reports calculated Nenaikita's advisory guideline range of imprisonment as 151 to 188 months based on a total offense level of 29 and a criminal history category of VI. [Doc. No. 66 at 20; Doc. No. 70 at 20]. Nenaikita's sentencing memorandum recited the same guideline range. [Doc. No. 75 at 1]. Nenaikita's only substantive objection to the PSR was on the grounds that he should receive a "minimal participant reduction" based on his role in the offense, which would result in a range of imprisonment from 92 to 115 months. [Doc. No. 70 at 24]. He did not object to any other calculation of the advisory guideline range.

At Nenaikita's combined plea and sentencing hearing on January 5, 2021, the Court sentenced Nenaikita to 151 months of imprisonment (at the bottom of the advisory

---

[2] Unless otherwise indicated, the Court uses ECF page numbering in citations.

guideline range) and three years of supervised release following his guilty plea to the one-count superseding information. [Doc. No. 85]. On October 14, 2021, Nenaikita filed the Motion to vacate his judgment and sentence, contending that his counsel, William P. Earley ("Earley") was ineffective and that he was sentenced under the standards for distribution of actual methamphetamines when he should have been sentenced under the advisory guidelines for distribution of mixed methamphetamines. The government opposes the request. [Doc. No. 95].

## II.   <u>Legal standards</u>

28 U.S.C. § 2255(a) provides that prisoners in federal custody may challenge their sentences if: (1) the sentence was imposed in violation of the United States Constitution or federal law; (2) the sentencing court had no jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized sentence; or (4) the sentence is otherwise subject to collateral review. Relief is available under § 2255 if the claimed error "constituted a fundamental defect which inherently resulted in a complete miscarriage of justice . . . ." *United States v. Fields*, 949 F.3d 1240, 1246 (10th Cir. 2019) (citing *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). The Court must presume "that the proceedings leading to the conviction were correct," and the burden is on the movant to demonstrate otherwise. *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief," the Court must grant an evidentiary hearing to

"determine the issues and make findings of fact and conclusions of law with respect

thereto." 28 U.S.C. § 2255(b).[3]

## III.   Discussion

In the Motion, Nenaikita makes four arguments that his judgment and sentence

should be vacated under § 2255. Nenaikita claims that:

- the government violated the plea agreement as he understood it;
- he was denied effective assistance of counsel during the plea stage;
- he was denied effective assistance of counsel during the sentencing proceedings; and
- he was denied effective assistance of counsel on appeal.

*See generally* Motion and Memorandum [Doc. Nos. 87, 87-1]. The Court addresses each

of these arguments below.

## A.   The government did not breach the plea agreement.

Nenaikita argues that the government breached the plea agreement at sentencing

because he "reasonably understood" the plea agreement to provide that his advisory

guideline range would be based on a mixture of methamphetamine rather than actual

---

[3] As explained below, the Motion and Memorandum, filings, and records conclusively show that Nenaikita is not entitled to relief because the government did not breach the plea agreement and Nenaikita received effective assistance of counsel. Thus, no evidentiary hearing is necessary under § 2255(b) on the first three issues. *See United States v. Lemon*, No. 20-6119, 2021 WL 5858405, at *5 (10th Cir. Dec. 10, 2021) (unpublished) ("[G]iven the patent weaknesses of [defendant's] ineffective-assistance claim on the existing record, no reasonable jurist would debate that the district court did not abuse its discretion in effectively ruling that the existing record conclusively shows that [defendant] is *not* entitled to relief."). Also as explained below, the Court held a hearing on the fourth basis—whether Earley was ineffective for not filing an appeal. Consistent with Rule 8(c) of the Rules Governing Section 2255 Proceedings for the United States District Courts, the Court appointed an attorney to represent Nenaikita at the evidentiary hearing. Orders [Doc. Nos. 100, 101, 106].

methamphetamine. [Doc. No. 87-1 at 11]. According to Nenaikita, pleading guilty to distributing a mixture rather than actual methamphetamines would result in an advisory guideline range calculation of 92–115 months. [*Id.*].

To analyze whether the government breached a plea agreement, courts first "examine the nature of the government's promise" and then "evaluate this promise in light of the defendant's reasonable understanding of the promise at the time the guilty plea was entered." *United States v. Brye*, 146 F.3d 1207, 1210 (10th Cir. 1998); *see United States v. Rubbo*, 948 F.3d 1266, 1268 (10th Cir. 2020) (same). Courts "apply general principles of contract law to define the nature of the government's obligations in a plea agreement" by reviewing the express language of the agreement and construing any ambiguity in the agreement against its drafter (the government). *Brye*, 146 F.3d at 1210.

## 1)    *The nature of the government's promise*

Nenaikita agreed to plead guilty to the one-count superseding information charging distribution of a mixture of methamphetamine (as opposed to the original charge of distributing actual methamphetamine), and the government agreed that Nenaikita should receive three total levels of downward adjustment for acceptance of responsibility. [Doc. No. 79 ¶¶ 2, 10]. The government complied with its promise to advocate for the acceptance-of-responsibility reduction, and Nenaikita received a three-level reduction. *See* [Doc. Nos. 83 and 89 at 65:19–67:5].

The plea agreement did not purport to calculate the advisory guideline range, and it stated that the government "does not make any promise or representation as to what

5

sentence Defendant will receive." [Doc. No. 79 ¶ 19]. Thus, the government could not have breached the plea agreement by calculating or guaranteeing Nenaikita's advisory guideline range based on actual methamphetamine because the plea agreement did not agree on or even refer to a guideline range.

**2)** ***The promise in light of Nenaikita's reasonable understanding of it at the time he pleaded guilty***

     i.    <u>The record reflects Nenaikita's reasonable understanding that the plea agreement made no promise about his advisory guideline range.</u>

The government made no promise or representation in the plea agreement as to Nenaikita's sentencing guideline range, and Nenaikita understood that fact at the time he entered his plea. During the plea colloquy, Nenaikita denied that "any officer of the government promised [him] the precise sentence [he would] receive if [he] plead[ed] guilty." [Doc. No. 89 at 40:16–19]. Nenaikita further affirmed that he understood "that the terms of the plea agreement regarding sentencing are merely recommendations to the Court" and "that [the Court] can reject the recommendations without permitting [Nenaikita] to withdraw [his] plea of guilty and impose a sentence that is more severe than [he] anticipated." [*Id.* at 38:12–20]; s*ee also* [*id.* at 27:19–22] (affirming that Nenaikita understood that his sentence might be different than any estimates his attorney had provided him).

Nenaikita's affirmations in the plea colloquy demonstrate his understanding that the terms of the plea agreement did not provide any promise as to what sentence he would receive, and even if it did, such a promise would in no way bind the Court. Regardless of what sentence Nenaikita may have anticipated, the Court looks only to the

"express language used in the agreement" when reviewing one's reasonable understanding of a plea agreement. *Brye*, 146 F.3d at 1210. Because the text of the plea contained no promises pertaining to Nenaikita's advisory guideline range, and because Nenaikita confirmed at the plea colloquy that he understood the nature of any such promise, the government did not breach the plea agreement in light of Nenaikita's reasonable understanding of the agreement at the time he entered his plea.[4]

This is not a case where the government agreed to advocate for a specific advisory guideline range at the plea stage and then failed to do so at the sentencing stage. *Cf.* Fed. R. Crim. P. 11(c)(1)(C) (discussing the type of plea agreement where the government agrees it will agree that a specific sentence or sentencing range is the appropriate disposition in the case). There was no promise that Nenaikita would be sentenced consistent with the mixture guidelines instead of actual-methamphetamine guidelines. In fact, there was no promise regarding the advisory guideline range at all, other than the agreement regarding acceptance-of-responsibility points, which was satisfied.

ii.    Nenaikita knew the presentence reports' calculated advisory guideline range before he pleaded guilty.

The most problematic fact for Nenaikita's position is that while the plea agreement did not state or even suggest Nenaikita's guideline range, Nenaikita nevertheless *knew* the advisory guideline range was calculated at 151 to 188 months' imprisonment *before* he pleaded guilty, based on his review of the PSRs. Nenaikita entered his plea of guilty at

---

[4] Nenaikita also confirmed that he understood the terms of the plea agreement, that there were not any statements in the plea agreement he wished to have clarified, and that he had no questions about the plea agreement. *See* [Doc. No. 89 at 34–35].

a combined plea and sentencing hearing. *See* [Doc. Nos. 43 and 83]; *see also* [Doc. No. 89 at 27:23–28:4] (noting that based on the nature of the combined proceeding, the United States Probation Officer had already investigated his background and criminal history and issued the presentence reports). Thus, unlike most defendants in this District, Nenaikita had the opportunity to review the Initial and Final PSRs, discuss them with his attorney, and reflect on their content long *before* he entered his plea. The Final PSR makes clear that for guideline purposes, Nenaikita was being held responsible for *actual* methamphetamine. [Doc. No. 70 ¶ 24]. This is because for the eight ounces of methamphetamine that Nenaikita sold on October 18, 2019, a Chemical Analysis Report determined those drugs to be "a net weight of 240.5 grams at a substance purity of 73%, or 175.5 grams of actual methamphetamine." [*Id.* ¶ 23]. Note (B) under the Drug Quantity Table in U.S.S.G. § 2D1.1(c) provides that "actual" methamphetamine refers to "the weight of the controlled substance, itself, contained in the mixture or substance." The Note goes on to give the example that 10 grams of PCP with a purity of 50% contains 5 grams of actual PCP for guideline purposes. *Id.* Note (B) then instructs the Probation Office to give defendants whichever offense level is greater: the one determined by the entire weight of the mixture or substance, or the weight of the "actual" drug based on the purity analysis. *Id.*

That is what happened here. Nenaikita's net 240.5 grams at 73% purity yielded 175.5 grams of actual methamphetamine under § 2D1.1(c). Factoring in other methamphetamine sales outlined in the Final PSR and not objected to, Nenaikita's total Converted Drug Weight under the guidelines was 3,680.1 kilograms. [Doc. No. 70 ¶ 24].

8

This amount put Nenaikita's base offense level at 32. [*Id.* ¶ 29] (citing U.S.S.G. § 2D1.1(c)(4)). After deducting the agreed three levels for acceptance of responsibility, the Final PSR concluded that "based upon a total offense level of 29 and a criminal history category of VI, the guideline imprisonment range is 151 months to 188 months." [*Id.* ¶ 91].

This calculation did not change between the time of the PSRs and the combined plea and sentencing hearing. Nenaikita was first able to review, comment on, and object to the initial PSR, which the United States Probation Office filed on October 15, 2020. [Doc. No. 66]. The Probation Office filed the Final PSR on October 29, 2020. [Doc. No. 70]. The Final PSR indicates that the Probation Office made changes to paragraphs 15a and 71 and attached an addendum addressing Nenaikita's objections. [Doc. No. 70 at 24–25, and docket text]. Nenaikita did not object to either PSR's guideline calculation based on the percentage of actual methamphetamine. Knowing all of this, Nenaikita accepted the plea agreement and pleaded guilty at his combined proceeding on January 5, 2021.

The Court confirmed during Nenaikita's combined plea and sentencing hearing that Nenaikita reviewed both versions of the PSR:

> [THE COURT]: Mr. Earley, have you and Mr. Nenaikita each had a full opportunity to read each of the versions of the presentence investigation reports and the addendum?
> MR. EARLEY: Yes, Your Honor. We've been over both.
> THE COURT: And have you and Mr. Nenaikita had the opportunity to discuss these materials and go over them thoroughly?
> MR. EARLEY: Yes, Your Honor.

[Doc. No. 89 at 47:22–48:4]. The hearing lasted an hour and a half. [Doc. No. 83]. Nenaikita and Earley had multiple opportunities to object during the hearing.[5] [Doc. No. 89 at 48:16–20] (indicating that Nenaikita had no additional objections to the PSR that were not included in the objections stated in the addendum); [*id.* at 64:25–65:13] (confirming after argument regarding the raised objections that "all objections and comments have been covered"). Nenaikita cannot now claim that the government somehow breached the plea agreement (which did not promise any advisory guideline range) when Nenaikita was in the unique position of knowing that the presentence reports stated his guideline imprisonment range should be calculated at 151 to 188 months *before* he pleaded guilty.

Nenaikita essentially argues that a "bait and switch" occurred at his plea hearing because he thought that he would be sentenced based on a mixture of methamphetamine. But the Court sees nothing in the promises in the plea agreement or evidence of

---

[5] The Seventh Circuit has held that a defendant waived his right to challenge conditions of his sentence because he was "on notice of the . . . conditions since the disclosure of the initial PSR," and "[a]ny doubt that [defendant] did not have sufficient advance notice" was "erased" when defendant told the sentencing judge he had carefully reviewed the presentence report and did not raise any objections at his combined plea and sentencing hearing. *United States v. De La Torre*, 940 F.3d 938, 943–44, 947 (7th Cir. 2019). The Fifth Circuit has likewise held that a defendant waived any challenge to the accuracy of the drug quantity calculation in his case when he informed the sentencing court that he was not pursuing objections to the presentence report and that the report was "correctly written in all respects." *United States v. Martinez*, 79 F. App'x 12, 13 (5th Cir. 2003) (unpublished).

Nenaikita's understanding of the promises that leads to the conclusion that the government breached the plea agreement.[6]

## B.   Nenaikita's counsel was not ineffective at plea or sentencing.

The Sixth Amendment of the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. "An indigent defendant in a criminal trial has the constitutional right to the assistance of counsel." *Baker v. Kaiser*, 929 F.2d 1495, 1498 (10th Cir. 1991) (citing *Gideon v. Wainwright*, 372 U.S. 335 (1963)). Although Nenaikita agreed to waive his right to collaterally challenge his conviction or sentence under § 2255, "a plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver." *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001). *See also* [Doc. No. 79 at ¶ 12(c)] (agreeing to waive the right to collaterally challenge or move to modify his conviction or sentence "except with respect to claims of ineffective assistance of counsel").

---

[6] Even if the government made oral promises about the guideline range to Nenaikita, those would be unenforceable because Nenaikita had a *written* plea agreement that specifically rejects any alleged agreement or promise that was not incorporated into the plea agreement. *See* [Doc. No. 79 at 1] ("No other agreement or promise exists. . . ."); *United States v. Welch*, 638 F. App'x 674, 679 (10th Cir. 2015) (unpublished) (stating that "we decline to enforce the government's alleged oral promises" where plea agreement rejected any other promise not incorporated therein). Besides, Nenaikita confirmed that was not the case. *See* [Doc. No. 89 at 40:2–9] (testifying he received no promises or assurances other than what was in the plea agreement).

To establish ineffective assistance of counsel, Nenaikita must show (1) that counsel's performance was deficient, and (2) that this deficiency prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This two-part test "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The Court may consider the two factors in any order, and an insufficient showing on either one is fatal to an ineffective-assistance claim. *Strickland*, 466 U.S. at 697.

For the first element, proving deficient performance requires Nenaikita to show that "considering all the circumstances," "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. The defendant must also show that "but for counsel's error, the defendant would have insisted upon going to trial." *United States v. Silva*, 430 F.3d 1096, 1099 (10th Cir. 2005) (citing *Hill*, 474 U.S. at 58–59). This inquiry "must be highly deferential" to counsel's judgment, and "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689. "To surmount the strong presumption of reasonable professional assistance, a criminal defendant bears the burden of proving, by a preponderance of the evidence, that his trial counsel acted unreasonably." *Sallahdin v. Mullin*, 380 F.3d 1242, 1248 (10th Cir. 2004); *see also United States v. Rantz*, 862 F.2d 808, 810 (10th Cir. 1988) ("There is a strong presumption that counsel provided effective assistance of counsel and petitioner has the burden of proof to overcome that presumption.") (citing *United States v. Cronic*, 466 U.S. 648, 658 (1984)).

12

For the second element, proving prejudice requires Nenaikita to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. When the defendant asserts that they would not have pleaded guilty if counsel had advised them correctly, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see also United States v. Orozco-Sanchez*, 804 F. App'x 952, 958 (10th Cir. 2020) (unpublished) (same). A "reasonable probability" in this context is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### 1)    *Counsel was not ineffective at the plea stage.*

Nenaikita argues that Earley was ineffective at the plea stage because "counsel misunderstood the application of the guidelines and incorrectly advised Defendant rendering the plea unknowing . . . ." [Doc. No. 87-1] at 14. Nenaikita claims that Earley informed him that his advisory guideline range would be calculated using a mixture of methamphetamine, resulting in a range of 92 to 115 months. *Id.* at 10–11, 14. Earley disputes this claim and asserts that he informed Nenaikita of the 151- to 188-month guideline range during a February 12, 2020, jail visit, and that throughout the plea stage, "[t]he use of actual methamphetamine to calculate the offense level was never an issue as counsel had made it clear to Mr. Nenaikita from the outset the actual methamphetamine weight would be used to derive a base offense level." Earley Aff. [Doc. No. 95-1 ¶¶ 7, 13].

i.    <u>Earley's performance was not deficient.</u>

As discussed above, the plea agreement contained no mention of the advisory guideline range. [Doc. No. 79 ¶ 19] (stating that the government "does not make any promise or representation as to what sentence Defendant will receive"). And as Earley states in his affidavit [Doc. No. 95-1 at 2], the methamphetamine Nenaikita was being held responsible for tested at 73% purity, which all parties knew as far back as January 17, 2020, when that was set forth in the complaint. [Doc. No. 1 at 5]. Nenaikita does not dispute that the Chemical Analysis Report determined that the drugs he sold were "a net weight of 240.5 grams at a substance purity of 73%, or 175.5 grams of actual methamphetamine." [Doc. No. 70 ¶ 23].

The Sentencing Guidelines require the calculation that happened in this case— when the issue is actual versus a mixture of methamphetamine, apply the guideline that gives the greater offense level. U.S.S.G. § 2D1.1(c) n.(B) ("In the case of a mixture or substance containing . . . methamphetamine, use the offense level determined by the entire weight of the mixture or substance, or the offense level determined by the weight of the . . . methamphetamine (actual), whichever is greater."); *see also United States v. Davis*, 628 F. App'x 619, 621 (10th Cir. 2016) (unpublished) (rejecting a similar argument to Nenaikita's in a § 2255 case: "The Guidelines *dictate* that a defendant's advisory sentencing range for methamphetamine distribution is to be calculated using whichever drug weight—actual or mixed—would produce the greater offense level.") (emphasis in original; citations omitted).

The PSRs correctly applied the Sentencing Guidelines in calculating the base offense level. Nenaikita has provided no authority for the position that the PSR and the Court can ignore the evidence of the actual methamphetamine in this case. In fact, it would likely have been reversible error *not* to sentence in accordance with the actual methamphetamine guidelines in this case. *See United States v. Gigley*, 213 F.3d 509, 519 (10th Cir. 2000) ("The district court should have used the quantity of methamphetamine (actual) to find the base offense level because it produces a higher sentence. Accordingly, we remand for resentencing using the quantity of methamphetamine (actual).") (citations omitted).

Earley's affidavit states that he and Nenaikita discussed the fact that a conviction for distribution of actual methamphetamine carries a mandatory minimum of 10 years of incarceration, whereas a conviction for a mixture has no minimum term of incarceration. [Doc. No. 95-1 at 5]; *compare* Indictment [Doc. No. 17] (charging Nenaikita with a drug offense carrying a mandatory minimum term of imprisonment of 10 years), *with* Superseding Information [Doc. No. 37] (charging Nenaikita with a drug offense carrying no mandatory minimum term of imprisonment). According to Earley's affidavit, this, as well as the reduction of a possible life sentence to a maximum of 20 years of imprisonment, was the benefit of the Plea Agreement. [Doc. No. 95-1 at 8]. Thus, the statements in Earley's affidavit comport with the applicable law, and he states that he advised Nenaikita of this.

On the surface, if Earley advised Nenaikita that his advisory guideline range was always going to be around 151 to 188 months of imprisonment based on actual

methamphetamine (after reductions for acceptance of responsibility), the effective benefit of pleading guilty to a mixture is not immediately clear. If Nenaikita were convicted of possessing actual methamphetamine, his advisory guideline minimum (151 months) would have been well over the statutory minimum (10 years), and his guideline maximum (188 months) would have been well under the statutory maximum (life). *See* 21 U.S.C. § 841(b)(1)(A). Similarly, the statutory maximum for distribution of a methamphetamine mixture (20 years) is almost five years over Nenaikita's guideline range for distribution of actual methamphetamine, meaning the Court would have had to vary or depart upward by around 30% to implicate the statutory maximum. *See* 21 U.S.C. § 841(b)(1)(C).

But it's the lack of a mandatory minimum sentence that reveals the benefit of pleading guilty to a methamphetamine mixture. Earley objected and argued at sentencing that Nenaikita should receive a mitigating role reduction under U.S.S.G. § 3B1.2. *See* [Doc. No. 70 at 24]. Had Nenaikita prevailed on this argument, the lower end of his advisory guideline range would have been 92 months—below the 10-year mandatory minimum in 21 U.S.C. § 841(b)(1)(A). Unless certain conditions are met that are not at issue here, *see, e.g.*, *United States v. A.B.*, 529 F.3d 1275, 1281 (10th Cir. 2008), the Court can't sentence below a statutory mandatory minimum. Thus, the only real way for Nenaikita to benefit from the minimal-participant reduction is if he pleaded to a crime without a mandatory minimum. [Doc. No. 70 at 24–25]. That the Court denied the request for a minimal-participant reduction, *see* [Doc. No. 89 at 61:1–62:24], does not

mean that Earley was ineffective.[7] Based on everything before the Court, it appears that Earley advised Nenaikita of the 92 to 115 months of imprisonment advisory range based on successfully securing a minimal-participant reduction, not based on the application of the methamphetamine mixture guideline.

Nenaikita's cited guideline range also refutes his position. Earley advocated for a sentence of 92 to 115 months of imprisonment based on the reductions for being a minimal participant and acceptance of responsibility. [Doc. No. 70 at 24]. This is the same range that Nenaikita states that Earley advised that he would receive but for a different reason: the guideline range for a conviction for distributing a methamphetamine mixture. [Doc. No. 87-1 at 10–11, 14]. Nenaikita appears to have misstated the reasons that his counsel advised and advocated for a guideline range of 92 to 115 months of imprisonment.

If Earley had advised Nenaikita that his guideline range would be based on a mixture of methamphetamine, the base offense level would have been 26. *See* U.S.S.G. § 2D1.1(c)(7). Nenaikita agrees. [Doc. No. 87-1 at 14]. But even in that event (as happened at sentencing), Earley still would have advocated for a minimal-participant reduction, leading to a *lower* guideline range than 92 to 115 months of imprisonment. *See generally* Earley Aff. [Doc. No. 95-1] (stating that Earley advised Nenaikita throughout his representation that he would seek a reduction of minor or minimal participant); [Doc.

---

[7] The Court could have declined to apply the reduction even if the parties had stipulated that Nenaikita was a minimal participant. *See United States v. Pelayo-Munoz*, 905 F.2d 1429, 1430 (10th Cir. 1990).

No. 70 at 24] (arguing for a minimal-role reduction); [Doc. No. 89 at 51:24–60:18]. With a purported base offense level of 26, minus three points for acceptance of responsibility, and minus another four levels for a minimal participant, Nenaikita's total offense level would have been 19. With a criminal history category of VI [Doc. No. 70 at 20], counsel then would have advised Nenaikita that his advisory guideline range would be 63–78 months' imprisonment if he pleaded to a methamphetamine mixture. The fact that Nenaikita repeatedly cites to 92 to 115 months conveys to the Court that he was correctly advised of his advisory range based on actual methamphetamine with possible reductions for acceptance of responsibility and minimal role—not that he was incorrectly advised of a range based on a methamphetamine mixture and inexplicably not advised of any reductions.[8] *See Strickland*, 466 U.S. at 689 (explaining that "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance").

Still most important, of course, is that Nenaikita was in the unique position of reviewing his presentence reports calculating his advisory guideline imprisonment range before he pleaded guilty. *See supra* Section III(A)(2)(ii). Given all of this, the Court does

---

[8] Even if Nenaikita's counsel had miscalculated Nenaikita's advisory sentencing guideline range, or if counsel had given Nenaikita an "erroneous prediction" of his guideline range, "[t]he fact that the applicable Sentencing Guideline range was higher than defense counsel estimated . . . does not demonstrate a violation of Federal Rule of Criminal Procedure 11" or constitute ineffective assistance of counsel. *Silva*, 430 F.3d at 1099–1100 (citation omitted) (denying a certificate of appealability on the district court's denial of the defendant's § 2255 motion).

not conclude that Nenaikita's counsel was ineffective, and that Nenaikita would have proceeded to trial but for counsel's ineffectiveness.

ii.   <u>Nenaikita has failed to show that ineffective assistance of counsel prejudiced him.</u>

Even assuming that counsel's performance fell below a standard of objective reasonableness, Nenaikita has not shown that counsel's deficient performance prejudiced his defense. Nenaikita argues that he rejected an initial plea offer that would have resulted in an anticipated guideline range of 151 to 188 months,[9] "and informed Counsel he would exercise his right to trial." [Doc. No. 87-1 at 13]. After ultimately pleading guilty to distribution of a mixture of methamphetamines, Nenaikita in essence now argues that had he known his expected sentencing guideline range would still be 151 to 188 months, he would have insisted on going to trial. But this argument lacks merit because, as discussed above and in the government's response [Doc. No. 95 at 19–20], Nenaikita *knew* the advisory guideline range *before* entering his plea because he reviewed the PSRs before his plea hearing. *See supra* Section III(A)(2)(ii). Nenaikita has not shown that he would have insisted upon going to trial had he known his sentencing range because he had that information long before he entered his plea. *Cf. United States v. Parker*, 720 F.3d 781, 788 (10th Cir. 2013) (concluding that because the defendant pleaded guilty after the sentencing judge informed him that his sentence was up to the

---

[9] The government and Earley state that the government only made one plea offer, an offer that was accepted by Nenaikita. *See* [Doc. No. 95 at 17]; [Doc. No. 95-1 ¶¶ 10–12]; [Doc. No. 89 at 32:1–3] (confirming all formal plea offers by the government were conveyed to Nenaikita).

discretion of the sentencing judge, "his mere allegation that, but for . . . counsel's failure to inform him about the use of relevant conduct in sentencing, he would have insisted on going to trial, is insufficient to establish prejudice.") (citation omitted). Even assuming Earley was ineffective, any ineffectiveness did not prejudice Nenaikita.

**2)    *Counsel was not ineffective at the sentencing stage.***

Nenaikita claims that Earley was ineffective at sentencing because counsel failed to raise the government's purported breach of the plea agreement and that this failure prejudiced Nenaikita by leading to a longer sentencing range than what Nenaikita believed was included in the plea agreement. [Doc. No. 87-1 at 15]. Nenaikita relies on the same arguments at the sentencing portion as he did in his plea section. [*Id.*].

Counsel's performance was not constitutionally deficient at sentencing. *See Strickland*, 466 U.S. at 687. As discussed above, there was no breach of the plea agreement, and Earley cannot be ineffective for failing to raise a nonexistent breach. *See supra* Section III(A). Nenaikita also argues that Earley was ineffective at sentencing based on misadvising Nenaikita about his guideline range. The Court has similarly rejected this argument about Nenaikita's guideline range. *See supra* Section III(B)(1).

Further, Nenaikita cannot show that any purported ineffective assistance of counsel at sentencing prejudiced the defense. *See Strickland*, 466 U.S. at 687. As discussed above, a Chemical Analysis Report determined that the eight ounces of methamphetamine that Nenaikita sold on October 18, 2019, had "a net weight of 240.5 grams at a substance purity of 73%," comprising "175.5 grams of actual methamphetamine." [Doc. No. 70 ¶ 23]. The Court has a duty to accurately calculate the

20

guideline range based on the facts presented in the PSR and at sentencing. *See Gall v. United States*, 552 U.S. 38, 49 (2007) ("[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range."). The Court can't simply ignore that the methamphetamine in this case was 73% pure and then apply an incorrect guideline range. This is true even if the parties had stipulated that the methamphetamine was a mixture and was not actual for purposes of the Sentencing Guidelines. *See United States v. Garcia*, 78 F.3d 1457, 1463 (10th Cir. 1996) (sentencing courts are under no duty "to accept the government's stipulation" on drug quantity); *United States v. Chaidez-Guerrero*, 665 F. App'x 723, 726 (10th Cir. 2016) (unpublished) (same); *see also* U.S.S.G. § 6B1.2 ("[A] plea agreement not to pursue a potential charge shall not preclude the conduct underlying such charge from being considered . . . in connection with the count(s) of which the defendant is convicted.").

Because the Court calculated sentencing based on actual methamphetamine regardless of the contents of the agreement, Nenaikita cannot show that the outcome of his case would have been different had his counsel advised him differently or advocated for a sentence based on a mixture of methamphetamine. His counsel was not ineffective at sentencing.

**C.      Counsel was not ineffective for failing to file an appeal.**

Nenaikita's final claim is that his counsel was ineffective because Nenaikita asked Earley to appeal Nenaikita's sentence, but Earley never filed an appeal. [Doc. No. 87 at

21

6]; [Doc. No. 87-1 at 16].[10] When a defendant gives his lawyer express directions either to file an appeal or not to file an appeal and counsel disregards those directions, counsel "acts in a manner that is professionally unreasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000); *see also United States v. Gordon*, 657 F. App'x 773, 776 n.5 (10th Cir. 2016) (unpublished) (explaining that prejudice may be "presumed in such circumstances [where counsel disregards specific instructions from the defendant to file a notice of appeal] because counsel's performance leads to the denial of an entire judicial proceeding") (citing *Flores-Ortega*, 528 U.S. at 483).

On the other hand, when a defendant does not give specific instructions regarding an appeal, counsel "is constitutionally obligated to advise the defendant 'about the advantages and disadvantages of taking an appeal, and mak[e] a reasonable effort to discover the defendant's wishes . . . when there is reason to think either (1) that a rational defendant would want to appeal . . . or (2) that [the attorney's particular client] reasonably demonstrated to counsel that he was interested in appealing.'" *United States v. Herring*, 935 F.3d 1102, 1108 (10th Cir. 2019) (quoting *Flores-Ortega*, 528 U.S. at 480).

---

[10] Nenaikita's plea agreement contains several waivers of his rights to appeal, collaterally challenge, or modify his conviction or sentence, but excludes "claims of ineffective assistance of counsel." [Doc. No. 79 at 7]. Based on this broad exception, the Court finds that Nenaikita has not waived the § 2255 claim based on the alleged failure to file an appeal. *See United States v. Garrett*, 402 F.3d 1262, 1267 (10th Cir. 2005) ("If [defendant] actually asked counsel to perfect an appeal, and counsel ignored the request, he will be entitled to a delayed appeal. This is true regardless of whether, from the limited perspective of collateral review, it appears that the appeal will not have any merit.") (citations omitted).

Earley asserts in his affidavit that he met with Nenaikita immediately after sentencing and advised Nenaikita that because his sentence was within the advisory sentencing guideline range, "the waiver of the right to appeal that was a part of his Plea Agreement would likely result in a dismissal of an appeal should one be pursued." [Doc. No. 95-1 ¶ 18]. Nenaikita was advised of this waiver during the combined plea and sentencing hearing, and he confirmed he understood it. [Doc. No. 89 at 36:24–37:11]; [*id.* at 91:2–7]. The Court's sentence of 151 months was within the advisory guideline range [Doc. No. 85 at 2], and the terms of the plea agreement were valid and binding.

Out of an abundance of caution, the Court held a hearing on this issue. *See Machibroda v. United States*, 368 U.S. 487, 494 (1962) (Section 2255(b) often requires a hearing before making findings on "controverted issues of fact"); *Herring*, 935 F.3d at 1107 (if a petitioner has "articulated facts in his section 2255 motion that, if proven, would entitle him to relief," then the Court should typically grant an evidentiary hearing to resolve the motion). *But see United States v. Harrison*, 375 F. App'x 830, 833–34 (10th Cir. 2010) (unpublished) ("But this does not imply that a habeas petitioner is automatically entitled to an evidentiary hearing merely because he makes a bald allegation that his attorney refused to file an appeal.").

Before the hearing, the government filed an Unopposed Motion to Expand Record [Doc. No. 114], which included three jail calls made by Nenaikita within a day or two of his sentencing and two letters sent by Earley to Nenaikita after his sentencing. The first letter included with these materials was sent by Earley on January 8, 2021. [Doc. No. 114-4]. It provided Nenaikita with information and materials relating to his sentence and

23

informed him that the state planned to issue a writ to have him transported to a different jail. [*Id.* at 1]. It also stated that "[a]s we discussed after court, I will not file an appeal." [*Id.*]. The second letter included with the government's motion was sent by Earley on May 11, 2021. In that letter, Earley explained that he received a call from a friend of Nenaikita asking about an appeal and that Earley did not appeal the sentence based upon his discussion with Nenaikita after the sentencing hearing. [Doc. No. 114-5 at 1]. Earley went on to remind Nenaikita in the letter that, given the waiver in his plea agreement and the fact that his sentence was within the guideline range, any appeal of the sentence would be dismissed. [*Id.*]. Earley also reminded Nenaikita that, based on his waiver of right to collaterally challenge or move to modify his sentence except for claims of ineffective assistance of counsel, "[t]he only avenue for [Nenaikita] to get back into court is a § 2255 motion (motion to vacate, set aside judgment or sentence)." [*Id.*].

At the hearing Nenaikita testified that he never received Earley's January 8, 2021 letter. He explained that immediately following his sentencing the first thing he did was direct Earley to file an appeal because he did not anticipate receiving a 151-month sentence and because he felt that Earley had lied to him. He explained that Earley "basically tried to talk [him] out of" appealing his sentence by telling him he could file a motion under § 2255. Nenaikita said that it was his understanding that, following his conversation with Earley, a direct appeal would be filed.

The evidence shows that Earley advised Nenaikita that there were no meritorious grounds for an appeal, that Nenaikita's best option was to file a § 2255 motion alleging ineffective assistance of counsel, and that he had 12 months to file such motion. The

evidence shows that Earley appropriately adhered to his constitutional obligations to consult with Nenaikita regarding the advantages and disadvantages of an appeal.

The Court agrees with the government that it is probable that Nenaikita initially demonstrated to Earley that he was interested in appealing. But, as shown by Nenaikita's statements in phone calls in the days following the sentencing hearing, Nenaikita's understanding—after receiving Earley's advice—was that his "only" option was to file a motion alleging ineffective assistance of counsel because there were no meritorious grounds for a direct appeal given his waivers. [Doc. No. 114-1 at 4:10–4:15] ("In one year from now, I'm going to appeal . . . . Bill already told me what to do."); [*id.* at 7:54–8:03] ("That's the only thing, that's the only thing I can do is wait one year exactly from today, he said January 5, 2022."); [Doc. No. 114-2 at 9:46–10:28] ("Like I said, I'm gonna appeal . . . exactly one year from now. 12 months from now I'm gonna appeal . . . . I'm gonna file for a resentence. I'm gonna get my resentence. That's what everybody's doing. But I can't go and appeal it right off the bat because the . . . government's gonna deny it. So me and Bill was talking about it. He said, 'You have to appeal it exactly 12 months from now, and you gotta file for ineffective counsel.' He was like, 'I'll help you do it.' You basically—I have to tell the judge that Bill didn't help me. And he didn't. And he said I'll win it. And then I'll come back in 12 months from now, and I'll get resentenced. Then they'll have to give me time served . . . ."); [Doc. No. 114-3 at 6:47–6:55] ("I didn't expect that, but—in a year from—in a year from now, I can appeal it . . . . I get resentenced in a year from now."); [*id.* at 7:12–7:31] ("Cause that lady was a new judge. And, like a lot of people in here—they know—they know the laws real good. And

it was tough. But that's what Bill told me too. He said there's only one way to appeal it, and that's to file for ineffective counsel. But you have to do it exactly 12 months from now.").[11]

Nenaikita's statements in these calls and Earley's letters—both of which share closer temporal proximity to the January 5, 2021 hearing and subsequent conversation between Nenaikita and Earley than Earley's affidavit and Nenaikita's hearing testimony—do not support Nenaikita's claim that he directed Earley to file a direct appeal. Nenaikita argued at the hearing that while there is evidence of his discussion with Earley regarding filing a § 2255 motion, there is nothing in the record that Nenaikita disavowed his intention to file a direct appeal. He contends that he intended to file both a direct appeal and a § 2255 motion. But Nenaikita ignores his repeated statements in the phone calls that there was only one way to appeal his sentence by asserting a claim of ineffective assistance of counsel.[12] In these conversations, Nenaikita does not mention directing Earley to file a direct appeal. The contemporaneous evidence—including his own statements and Earley's letters—indicates that was not the case.

Based on all the evidence presented to the Court, Nenaikita has not shown, more likely than not, he left Earley with direction to file a direct appeal and Earley then

---

[11] The Court omitted unnecessary language, including expletives and indecipherable portions.

[12] The Court agrees with the government that while Nenaikita's statements mentioning waiting 12 months to file a § 2255 motion evince a misunderstanding, they nevertheless demonstrate that Nenaikita believed his only option to be resentenced was by alleging ineffective assistance of counsel, not by directly appealing his sentence.

disregarded his direction. *See United States v. Driscoll*, 892 F.3d 1127, 1135 (10th Cir. 2018) (adopting the "more likely than not" burden of proof for § 2255 movant). Nenaikita therefore fails to meet his burden of proving counsel's performance was constitutionally deficient.

## IV.   <u>Appealability</u>

Under Rule 11 of the Rules Governing § 2255 Proceedings, the Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the Court must "indicate which specific issue or issues satisfy the showing." 28 U.S.C. § 2253(c)(3). To satisfy this standard, the applicant must demonstrate that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke*, 542 U.S. 274, 282 (2004)).

For the reasons stated above, the Court finds that Nenaikita has not satisfied this substantial showing standard. The Court therefore denies a certificate of appealability as to its ruling on Nenaikita's Section 2255 motion.

## V.   <u>Conclusion</u>

The Court finds that Nenaikita is not entitled to § 2255 relief. Consequently, the Court DENIES Nenaikita's Motion under 28 U.S.C. § 2255 to vacate, set aside or correct sentence [Doc. No. 87] and DECLINES to issue a certificate of appealability.

IT IS SO ORDERED this 30th day of August 2023.


JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE